MEMORANDUM OPINION

 

No. 04-05-00236-CV

Jesus MUNOZ, III,

Appellant
v.
JIM WELLS COUNTY, Texas, Sheriff Oscar López, Mary Alice Benavides, 

and Dionicio Arredondo,

Appellee s
From the 79th Judicial District Court, Jim Wells County, Texas

Trial Court No. 05-01-43087-CV

Honorable Richard C. Terrell , Judge Presiding





Opinion by: Phylis J. Speedlin , Justice



Sitting: Sarah B. Duncan , Justice

 Karen Angelini, Justice 

 Phylis J. Speedlin, Justice

 

Delivered and Filed: June 14, 2006



AFFIRMED

 Jesus Munoz, III, appeals from an order granting summary judgment in favor of appellees, Jim Wells County, Texas, and
three county employees-Sheriff Oscar López, Dispatcher Mary Alice Benavides and Deputy Dionicio Arredondo
("individual defendants"). The underlying lawsuit was brought by Munoz against Jim Wells County, Deputy Gilbert
Bernal, and the individual defendants for injuries sustained while Munoz was detained at the Jim Wells County Jail. 
Because we hold there is no evidence that Munoz' injuries were caused by a condition or use of tangible property, Jim Wells
County is protected by sovereign immunity. In addition, the individual defendants properly met their burden of proving
they were protected by official immunity, which was not rebutted by Munoz. The trial court also did not abuse its discretion
by granting a severance. Therefore, we affirm the judgment of the trial court.

Factual and Procedural Background

 In the early morning hours of January 24, 2002, Munoz was arrested for driving while intoxicated and transported to the
Jim Wells County Jail. Munoz refused to cooperate with jail personnel, refused to complete paperwork, was "belligerent,"
used profanity, and repeatedly pushed the emergency call button asking to use the telephone. Both Benavides and
Arredondo asked Munoz to stop pressing the call button and told him he would have to wait to use the telephone. Later that
morning, Deputy Bernal reported for duty and learned of Munoz' behavior from Dispatcher Benavides and Deputy
Arredondo. Bernal requested that Arredondo give him the key to Munoz' cell so Bernal could speak to him outside his jail
cell to try to "calm him down." Bernal received the keys from Arredondo, used them to open Munoz' cell, and allowed
Munoz to exit the cell. At that time, Bernal and Munoz had a conversation outside the jail cell which escalated, and Bernal
perceived hand gestures made by Munoz to be a dangerous threat. Bernal hit Munoz once in the nose with his fist, causing
Munoz to suffer lacerations, a broken nose and a concussion. Munoz subsequently filed suit alleging multiple negligence
causes of action against Deputy Bernal, Jim Wells County, and the individual defendants. All the defendants except Bernal
filed a motion for summary judgment and a motion for severance. The trial court granted the motion for severance and
assigned a new cause number to Munoz' claims against the county and the individual defendants. Subsequently the trial
court granted summary judgment in favor of the county and the individual defendants and dismissed Munoz' claims with
prejudice. Munoz now appeals both the severance and the summary judgment. As guided by Rule 38.9, we construe
Munoz' brief liberally and understand his argument to be that the summary judgment should be reversed because: (1) the
county's sovereign immunity is waived under Texas Civil Practice and Remedies Code § 101.021; and (2) the individual
defendants did not plead and prove their entitlement to official immunity as a matter of law. Tex. R. App. P . 38.9; Tex.
Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2005). Munoz also argues the trial court abused its discretion in
granting the severance.

Summary Judgment for Jim Wells County

 On appeal, we review a summary judgment de novo. Hendrix v. Bexar County Hosp. Dist., 31 S.W.3d 661, 662 (Tex.
App.--San Antonio 2000, pet. denied). We will uphold a summary judgment only if the summary judgment record
establishes that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law on a
ground set forth in the motion. Tex. R. Civ. Proc. 166a(c); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). 
We view the evidence in the light most favorable to the nonmoving party and disregard all contrary evidence and
inferences. Hendrix, 31 S.W.3d at 662. A summary judgment is appropriate if the defendant "establishes all elements of an
affirmative defense to each claim." Grinnell, 951 S.W.2d at 425; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49
(Tex. 1985). 

 Here, Jim Wells County moved for summary judgment on the affirmative defense of sovereign immunity. Under the
doctrine of sovereign immunity, a governmental entity is not liable for the torts of its officers or agents in the absence of a
constitutional or statutory provision creating such liability. Medrano v. City of Pearsall, 989 S.W.2d 141, 143-44 (Tex.
App.--San Antonio 1999, no pet.). Once a defendant has established that it is a governmental entity, it has satisfied its
initial summary judgment burden and the burden shifts to the plaintiff to raise a fact issue. Medrano,989 S.W.2d at 144. It
is undisputed that Jim Wells County is a governmental entity; thus, it met its initial burden of proving sovereign immunity. 
See Tex. Civ. Prac. & Rem. Code. Ann. § 101.001(3) (Vernon 2005). In reply, Munoz argues that sovereign immunity as to
the county is waived because his injuries were caused by the use of the keys to open the jail cell, which is tangible personal
property. Specifically, Munoz maintains that (1) Arredondo's action in giving the jail keys to Bernal was negligent because
Arredondo was aware of Munoz' night-time behavior and knew, or should have known, that Munoz should not be let out of
the cell without being patted down or properly restrained; and (2) Bernal negligently used the jail keys to open the cell door
and to allow Munoz to exit the cell without proper restraint and without patting him down. We disagree that the use of keys
under these circumstances waives sovereign immunity as to Jim Wells County. 

 The Texas Tort Claims Act ("TTCA") waives governmental immunity under three limited circumstances. See Tex. Civ.
Prac. & Rem. Code. Ann. § 101.021; Reynosa v. Univ. of Texas Health Sci. Ctr. at San Antonio, 57 S.W.3d 442, 445 (Tex.
App--San Antonio 2001, pet. denied). Munoz cites only to one of those circumstances, § 101.021(2), which states that a
governmental entity may be held liable for personal injury or death caused by a condition or use of tangible personal
property if the governmental unit would, were it a private person, be held liable under Texas law. Tex. Civ. Prac. & Rem.
Code. Ann. § 101.021(2). Section 101.021(2) requires that for immunity to be waived, the injuries at issue must be
proximately caused by the condition or use of tangible property. See Dallas County Mental Health & Mental Retardation v.
Bossley, 968 S.W.2d 339, 343 (Tex. 1998) (emphasis added). More than mere involvement of the property is necessary and
property will not be considered to have proximately caused injury if it does no more than furnish the condition that makes
the injury possible. Id. Here, although using the keys to open the jail cell was part of a series of events which ultimately
resulted in Munoz' injuries, the use of the keys can not be said to have caused the injury. Accordingly, the county's
sovereign immunity was not waived under § 101.021(2). (1) We affirm the summary judgment in favor of Jim Wells
County.

Summary Judgment for Individual County Employees

 The individual defendants moved for summary judgment on the basis of official immunity. (2) Official immunity is an
affirmative defense that protects public officers from civil liability for conduct that would otherwise be actionable. City of
Lancaster v. Chambers, 883 S.W.2d 650, 653-54 (Tex. 1994). Under state law, a governmental employee is entitled to
official immunity for the performance of discretionary duties within the scope of the employee's authority, provided the
employee acted in good faith. (3) Id. at 653; Baker v. Story, 621 S.W.2d 639, 644 (Tex. Civ. App.--San Antonio 1981, writ
ref'd n.r.e.). To succeed on a motion for summary judgment, the individual defendants must prove each element of official
immunity as a matter of law. Univ. of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000). Munoz conceded that the
individual defendants were government employees acting within the scope of their authority. The individual defendants and
Munoz disagree, however, as to whether the evidence brought forth by the individual defendants showed that their actions
were discretionary and done in good faith. Therefore, we must examine the summary judgment evidence to determine
whether the individual defendants established as a matter of law that they were (1) performing discretionary duties and (2)
acting in good faith. 

 First, we examine the evidence to determine whether the individual defendants were performing discretionary duties. 
Discretionary acts are those which involve personal deliberation, decision, and judgment. Chambers, 883 S.W.2d at 654. 
Actions which require strict obedience to orders or the performance of a duty, leaving nothing to the choice of the actor, are
merely ministerial, and are not protected by official immunity. Id. A function is ministerial if the law prescribes the duties
to be performed with such precision that nothing is left to the discretion of the actor. Id. Texas courts have recognized
several instances where jailers legitimately exercised discretion while performing their duties. See, e.g., City of Coppell v.
Waltman, 997 S.W.2d 633, 636-37 (Tex. App.--Dallas 1998, pet. denied) (although city's policies required a prisoner to be
"constantly" monitored, the manner in which monitoring was carried out was left to the discretion of the jail dispatcher);
Texas Dept. Crim. Justice v. Watt, 949 S.W.2d 561, 565-66 (Tex. App.--Waco 1997, no writ) (policy regarding use of force
against inmates allowed for exercise of individual judgment and deliberation in conforming to policy guidelines); City of
Galveston v. Burns, 949 S.W.2d 881, 884-85 (Tex. App.--Houston [14th Dist.] 1997, no writ) (city's policy regarding
screening for potentially suicidal prisoners involved great deal of discretion in assessment of prisoners). 

 Here, the individual defendants presented summary judgment evidence, consisting of affidavits from each individual
defendant, witness statements from both Benavides and Arredondo, an internal investigation report, the Rules and
Regulations of Jim Wells County Jail, and excerpts from Bernal's deposition. After reviewing the evidence, we find the
actions of each of the individual defendants in this case clearly required personal deliberation, decision and judgment and
were not merely ministerial. See Chambers, 883 S.W.2d at 654. The law has not specifically prescribed the duties
performed here with such precision as to leave no discretion up to the individual employee.See id. In addition, the Jim
Wells County Jail Rules and Regulations do not provide guidelines so specific as to leave no judgment to the individual
actor. Specifically, it was Benavides' duty to answer the emergency call button that Munoz continually pushed to request a
phone call. She used discretion in responding to Munoz, telling him he would have to wait for the judge to arrive before
using the telephone. She also asked him to stop pressing the emergency call button. This was the only contact Benavides
had with Munoz. Similarly, Arredondo used his discretion by also telling Munoz that he could not yet use the telephone. 
He told Munoz he had not yet been allowed to do so because he had refused to finish the paperwork required to complete
booking. There was no outlined protocol for the particular situation that would have negated the need for Arredondo to use
his discretion. He also practiced discretion in deciding whether to hand the keys to Munoz' cell to Bernal. Lastly, Sheriff
López clearly used his discretion to promulgate rules and regulations to maintain standards to protect inmates.

 Having held the individual defendants' actions required discretion, we now determine whether they established that they
acted in good faith. In City of Lancaster v. Chambers, the Texas Supreme Court articulated an objective test for
determining if a police officer seeking official immunity acted in good faith. Chambers, 883 S.W.2d at 656. While
Chambers involved a police pursuit, the objective standard has been applied in other types of cases. See id. Generally, the
test for objective good faith is whether a reasonably prudent officer, under the same or similar circumstances, could have
believed that his actions were justified. Id.; Antu v. Eddy, 914 S.W.2d 166, 171 (Tex. App.--San Antonio 1995, no writ);
Rhodes v. Torres, 901 S.W.2d 794, 798 (Tex. App.--Houston [14th Dist.] 1995, no writ).

 Here, the individual defendants established with competent summary judgment evidence that they acted in objective good
faith. The evidence with respect to Benavides and Arredondo reflects that reasonably prudent officers in their position and
with the information they possessed at the time, could have acted similarly and believed their actions justified. Chambers,
883 S.W.2d at 656. Benavides had never known Deputy Bernal to strike an inmate or lose his temper with an inmate. In
fact, in her experience, Bernal was good at talking to hostile inmates. Arredondo had a similar perception of Bernal. 
Arredondo had never seen Bernal use unnecessary force against an inmate. It was routine for an officer to sit down and talk
to an inmate to get them to "calm down." Bernal had been successful in calming down disruptive inmates on past
occasions. The individual defendants did not know of any propensity of Bernal to engage in violence. In addition,
Arredondo immediately went to Munoz' aid after he was struck by Bernal. He "covered" Munoz from Bernal, then sat
Munoz down in a chair and brought him ice and towels while waiting for the ambulance, called by Benavides, to arrive. 
Although Sheriff López was not present during the incident, he learned of it soon thereafter. He maintains strict guidelines
for the Jim Well's County Sheriff's Department prohibiting such use of unnecessary force. He immediately opened an
investigation into the incident, which resulted in Bernal's termination of employment. López runs programs to ensure the
deputies are well trained to avoid incidents such as the one involving Munoz. Based on this evidence, we find that
reasonably prudent officers, under the same or similar circumstances, could have believed that their actions were justified. 
Chambers, 883 S.W.2d at 656. 

 Because the individual defendants properly sustained their burden of proof, the burden shifted to Munoz to produce
controverting evidence raising an issue of fact as to the liability of the individual defendants for Munoz' injuries. Medrano,
989 S.W.2d at 142-43. Munoz' response to the individual defendants' motion for summary judgment did not present any
substantive argument regarding how the individual defendants failed to meet their burden to prove official immunity.
Rather, his response claimed the individual defendants did not properly argue their entitlement to official immunity. The
evidence attached to his response consisted of the individual defendants' fourth amended petition, excerpts from the
depositions of Bernal, Arredondo, Benavides and López, an offense report, excerpts from the Jim Wells County Jail Rules
and Regulations, and the witness statement of Benavides. None of this evidence presented a fact issue as to any element of 
the individual defendants' claim of official immunity. Because the individual defendants met their burden to establish all
elements of the affirmative defense of official immunity, and Munoz failed to raise a fact issue as to whether the individual
defendants were performing discretionary duties in good faith, we hold the trial court properly granted summary judgment
in their favor. Severance

 Any action against a party may be severed and separately pursued. Tex. R. Civ. P. 41. The trial court has broad discretion
in the matters of joinder of parties and severance and consolidation of causes. Guaranty Fed. Savings Bank v. Horseshoe
Operating Co., 793 S.W.2d 652, 658 (Tex. 1990). A trial court's decision to sever will be reversed only upon a finding of
an abuse of discretion. Id. A severance is proper if: (1) the controversy involves more than one cause of action, (2) the
severed cause is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed cause is not
so intertwined as to involve identical facts and issues. Id. The controlling reasons for severance are to do justice, avoid
prejudice, and further the convenience of the parties and the court. Id. Based on the record, we do not find an abuse of
discretion by the trial court in severing out Munoz' claims against Bernal as he was the principal actor in the incident giving
rise to Munoz' injuries. We therefore affirm the order granting severance. Based on the foregoing reasons, we affirm the
judgment of the trial court.

 



 Phylis J. Speedlin , Justice





1. Munoz also asserts various claims regarding negligent supervision, hiring, instruction, training, and employment of
Bernal and the individual defendants; however, Munoz is required to establish an independent waiver of sovereign
immunity before it can advance these theories of recovery and failed to do so. City of Laredo v. New Yorkers Apparel, Inc.,
No. 04-04-00887-CV, 2005 WL 1458248 at *4 (Tex. App.--San Antonio June 22, 2005, no pet.);City of Garland v. Rivera,
146 S.W.3d 334, 338 (Tex. App.--Dallas 2004, no pet.).

2. "Official immunity" is one of several interchangeable terms, including "quasi-judicial immunity," "qualified immunity,"
"discretionary immunity," and "good faith immunity," used to refer to an affirmative defense available for governmental
employees sued in their individual capacities. City of Houston v. Kilburn, 849 S.W.2d 810, 812 n. 1 (Tex. 1993).

3. The individual defendants broadly reference in their motion for summary judgment both the federal and state standards
for official immunity. Because Munoz only sued the individual defendants under state law claims, we look only to state law
to determine whether they established official immunity.